J. Michael Keyes (#262281)
keyes.mike@dorsey.com
Stefan Szpajda (#282322)
szpajda.stefan@dorsey.com
Wonji Kerper (#335812)
kerper.wonji@dorsey.com
DORSEY & WHITNEY LLP
Columbia Center
701 Fifth Avenue, Suite 6100
Seattle, WA 98104
Telephone:   (206) 903-8800
Facsimile:    (206) 903-8820

Kent J. Schmidt (#195969)
schmidt.kent@dorsey.com
Navdeep Singh (#284486)
singh.navdeep@dorsey.com
DORSEY & WHITNEY LLP
600 Anton Boulevard, Suite 2000
Costa Mesa, CA 92626
Telephone:   (714) 800-1400
Facsimile:    (714) 800-1499

*Attorneys for A Parent Media Co. Inc.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| A PARENT MEDIA CO. INC., <br><br> Plaintiff, <br><br> v. <br><br> GENIUS BRANDS INTERNATIONAL, INC., <br><br> Defendant. | CASE NO. 2:21-CV-04897 <br><br> **VERIFIED COMPLAINT FOR (1) FEDERAL TRADEMARK INFRINGEMENT (15 U.S.C. § 1114); (2) FALSE DESIGNATION OF ORIGIN OR SPONSORSHIP AND UNFAIR COMPETITION (15 U.S.C. § 1125; (3) UNFAIR COMPETITION & FALSE ADVERTISING (CAL. BUS. & PROF. CODE §§ 17200 & 17500 ET SEQ.); (4) COMMON LAW TRADEMARK INFRINGEMENT** <br><br> DEMAND FOR JURY TRIAL |

Plaintiff A Parent Media Co. Inc. ("A Parent Media Co.," "APMC" or "Plaintiff"), by its attorneys, Dorsey & Whitney LLP, for its Complaint alleges as follows:

## I.    INTRODUCTION & SUMMARY OF RELIEF REQUESTED

1.    A Parent Media Co. brings this action against Genius Brands International, Inc. ("GBI" or "Defendant") for trademark infringement under Section 32(1) of the Lanham Act (15 U.S.C. § 1114(1)); for unfair competition and false designation of origin or sponsorship in violation of Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)); for unfair competition and false advertising in violation of the California Business and Professions Code (Cal. Bus. & Prof. Code §§ 17200 & 17500, *et seq.*); and for common law trademark infringement arising from Defendant's willful and deliberate acts that are causing substantial and irreparable harm to A Parent Media Co.'s goodwill, reputation, and business.  As set forth below, Defendant has intentionally copied Plaintiff's federally-registered trademarks KIDOODLE.TV®, KIDOODLE®, and KIDOODLETV® and used them in Defendant's online advertising scheme to dupe and trick consumers into believing Defendant is connected to, affiliated with, or sponsored by Plaintiff.  In reality, no such connection, affiliation, or sponsorship exists; rather, Defendant is piggybacking on A Parent Media Co.'s tremendous goodwill and picking off Plaintiff's customers and potential customers in violation of federal and state law.  A Parent Media Co. seeks a temporary restraining order, preliminary and then permanent injunctive relief, damages, disgorgement of profits, attorneys' fees and costs, and all other available relief in law or equity.

## II.    PARTIES

2.    Plaintiff is an Alberta company with its principal place of business at Suite 320, 333–24ᵗʰ Avenue SW. Calgary, Alberta, Canada, T2S 3E6.

3.    Defendant is a Nevada corporation with its principal place of business at 190 N. Canon, 4ᵗʰ Floor, Beverly Hills, CA 90210.  Defendant is a publicly traded

company in the U.S.

### III.   JURISDICTION AND VENUE

4.   Subject matter jurisdiction is vested in this Court pursuant to 28 U.S.C. § 1331 and § 1338 because this dispute concerns the rights of parties under the Lanham Act, 15 U.S.C. §1051 *et seq*.

5.   This Court has supplemental jurisdiction over all other state claims pursuant to 28 U.S.C. § 1367 because all state law claims are related to the same controversy that gives rise to the federal causes of action alleged.

6.   This Court has personal jurisdiction over Defendant because Defendant's principal place of business is located in Beverly Hills, California. Further, Defendant's misleading and infringing Google Ads scheme, as discussed and set forth below is being implemented and carried out in this judicial district.

7.   Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(b)(2) because Defendant resides within this judicial district and Defendant's misleading and infringing scheme is implemented and carried out in this judicial district.

### IV.   FACTS IN SUPPORT OF CLAIMS FOR RELIEF

**A.   Creation and Success of Kidoodle.TV®, Plaintiff's Safe Streaming™ Service for Kids.**

8.   Almost a decade ago, Mike Lowe and Neil Gruninger, both with backgrounds in digital media and technology, set off to launch a unique product for young people:  a children's only entertainment platform.

9.    In 2014, after extensive research, investigation, and planning, Messrs. Lowe and Gruninger, through their company A Parent Media Co., launched "Kidoodle.TV" in the U.S. and Canada.  Kidoodle.TV is accessed by consumers in the U.S. over the Internet through entering the following Uniform Resource Locator ("URL") into any Internet browser:  https://www.kidoodle.tv.  Kidoodle.TV is also accessible for free in the U.S. through smart phones or tablets when a consumer downloads the Kidoodle.TV "app" through the Apple "App Store" or through

Google's "Google Play" store.  Consumers can also access Kidoodle.TV directly through connected TVs and through popular media streaming boxes such as Roku, Apple TV, and Amazon.com's Fire TV.

10.    Once a consumer accesses Kidoodle.TV, they are presented with a rich and varied library of curated entertainment content for kids up to age 12.  This content includes engaging, informative, and fun videos strictly chosen for kids.  One of the most noteworthy aspects of the Kidoodle.TV platform is that content is "pre-screened" to ensure it is wholesome and appropriate for young children.  This aspect of the Kidoodle.TV platform is one key component of what A Parent Media Co. refers to as "Safe Streaming™", and it has been lauded by consumers, industry insiders, and the media.

11.    Parents love the safe and wholesome environment created by Plaintiff's Kidoodle.TV.  Just some of the many hundreds of 5-star reviews state things such as the following:



Jeff Seko
★ ★ ★ ★ ★ February 5, 2021



Tired of the bad content that ytkids allows on its platform- this is a great alternative.



Claudius O. Atkinson Sr.
★ ★ ★ ★ ★ December 12, 2020



I would recommend this app to any adults that's trying to get their kids just to watch the kids shows instead of scrolling through the channels on your television and coming across things that they're not supposed to see at such a young age



Tommy Williams
★ ★ ★ ★ ★ April 10, 2020



App has been a great substitute for our 70" tv that our son often sits too close to during game tv time . Noticed also that we haven't seen any ads for gory video games in between like other similar apps we are trying, a small bonus

12.    Several organizations that rate and review entertainment products for kids have bestowed awards and honors on Plaintiff.  For example, in November 2020,

Kidoodle.TV won a prestigious "Gold Stevie Award" for the Best Family & Kids App in the Family & Kids Category of the 2020 International Business Awards. Plaintiff also received a "Mom's Choice Award" in 2020 as well as the Platinum Award for "Best Mobile App Awards." In March 2021, Plaintiff won a "Parents' Picks Award" for the Best Products for Elementary Kids.  Attached hereto as **Exhibit A** are true and correct copies of the above-referenced awards.

13. Plaintiff's platform has also received significant media attention and buzz.  For example, in December 2019, in an article titled "Calgary-born Kidoodle.TV Recognized Globally as Safe Streaming Option for Kids," *Calgary Herald* noted Kidoodle.TV is "a place where [parents] can trust their children will not be exposed to something harmful or inappropriate" with "no adult content and robust controls for parents."  Attached hereto as **Exhibit B** is a true and correct of the *Calgary Herald* news article.

14. In December 2020, *Variety* ran a story about Plaintiff's platform entitled "Kidoodle.TV Scores By Serving Viewers Safe Vid Game Videos."  The article explains how Plaintiff's business model of providing "safe streaming" is making the platform a "go to" location for parents who want to provide their kids with safe and engaging content.  Attached hereto as **Exhibit C** is a true and correct of the *Variety* news article.

15. Plaintiff is continuing to expand its brand in the U.S. through a series of high profile partnerships.  On May 7, 2021, A Parent Media Co. and Vizio, an American company that sells smart TVs and operates the "SmartCast" platform, announced a partnership to offer Kidoodle.TV's content on SmartCast.  Through a co-branded "Kids Corner," Plaintiff and Vizio will provide Kidoodle.TV's age appropriate programs to families in the U.S. and Canada.  Attached hereto as **Exhibit D** is a true and correct copy of an article related to the Vizio and Kidoodle.TV partnership.

16. And in addition to its already existing relationship with Samsung

providing Kidoodle.TV's programs on connected TVs through Samsung TV Plus, on May 19, 2021, Plaintiff announced a further partnership with Samsung with the release of Kidoodle.TV's programs on Samsung's Galaxy smartphones and tablets through Samsung TV Plus.  Attached hereto as **Exhibit E** is a true and correct copy of an article related to the Samsung and Kidoodle.TV partnership.

17.    As of June 16, 2021, Kidoodle.TV is available in 160 countries and territories with a heavy presence in the U.S., Europe, and the U.K with over 50 million App installs globally across devices such as Android, iOS, ROKU, Fire TV, Samsung, LG, Vizio, HiSense, and other connected TV products.

**B.    A Parent Media Co.'s Intellectual Property Rights**

18.    A Parent Media Co. owns a U.S. Federal trademark registration for the mark KIDOODLE.TV for a variety of services, including for "[e]ntertainment and educational services, namely, distribution of educational and entertainment television and motion picture programming for others by means of multiple forms of transmission media over the Internet; entertainment services, namely, providing non-downloadable portions of prerecorded audio, visual and audiovisual works in the nature of children's television programs and motion picture films via the Internet." A true and correct copy of the U.S. Certificate of Registration No. 6,210,025 is attached hereto as **Exhibit F**. Plaintiff's date of first use of this mark in U.S. commerce dates back to at least as early as 2012.

19.    A Parent Media Co. also owns a U.S. Federal trademark registration for the mark KIDOODLE for a variety of services, including for "[e]ntertainment and educational services, namely, distribution of educational and entertainment television and motion picture programming for others by means of digital transmission over the internet; Entertainment services, namely, providing portions of prerecorded audio, visual and audiovisual works via the internet."  A true and correct copy of the U.S. Certificate of Registration No. 4,810,778 is attached hereto as **Exhibit G**.  Plaintiff's date of first use of this mark in U.S. commerce dates back to at least as early as 2012.

On June 15, 2021, A Parent Media Co. submitted to the United States Patent and Trademark Office (the "USPTO") a Combined Declaration of Continued Use and Incontestability under Section 8 and 15. *See* 15 U.S.C. §1058 and 15 U.S.C. § 1065.

20.    Plaintiff also owns a U.S. Federal trademark registration for  the mark KIDOODLETV for a variety of services, including for "[e]ntertainment and educational services, namely, distribution of educational and entertainment television and motion picture programming for others by means of digital transmission over the internet; Entertainment services, namely, providing portions of prerecorded audio, visual and audiovisual works via the internet."  A true and correct copy of the U.S. Certificate of Registration No. 4,810,779 is attached hereto as **Exhibit H**.  Plaintiff's date of first use of this mark in U.S. commerce dates back to at least as early as 2012.  On June 15, 2021, A Parent Media Co. submitted to the USPTO a Combined Declaration of Continued Use and Incontestability under Section 8 and 15. *See* 15 U.S.C. §1058 and 15 U.S.C. § 1065.

### C.    Defendant Launches its Kartoon Channel! Platform—A Platform That Competes Head-to-Head with Kidoodle.TV.

21.    Defendant is a Beverly Hills-based entertainment company founded in 2013.   On June 15, 2020, Defendant launched Kartoon Channel! ("Kartoon Channel"), a video on demand platform it created to deliver entertainment content designed for children.  Defendant advertises Kartoon Channel as a "fun, family friendly, and free" platform with "smart and safe" programs that are carefully curated to be age appropriate.[1]

22.    Kartoon Channel competes directly with Kidoodle.TV.  For starters, they both offer animated content intended for children.  Similarly, they both offer their content through the same channels and technology platforms.  Just like with Kidoodle.TV, Kartoon Channel is also accessible in the U.S. through smart phones or tablets when a consumer downloads the Kartoon Channel app through the Apple

---

[1] GENIUS BRANDS INTERNATIONAL,  https://www.gnusbrands.com/kartoonchannel (last visited on June 11, 2021).

App Store or through Google's Google Play store.  Consumers can also access Kartoon Channel directly through connected TVs and through popular media streaming boxes such as Roku, Apple TV, and Amazon.com's Fire TV.  Kartoon Channel is also accessible over the internet by entering the following URL into any Internet browser:  https://www.kartoonchannel.com.  According to Defendant's public statements, as of March 31, 2021, Kartoon Channel is allegedly available in over 100 million U.S. households and on over 300 million devices.

23.    In the lead up to the launch of Kartoon Chanel last year and continuing to the present, Defendant issued press releases and other marketing blitzes touting the business luminaries and other household names that Defendant landed in connection with this new corporate venture.

24.    For example, at the outset of Defendant's venture in June 2020, Defendant announced the appointment of the Executive Chairman of Kartoon Channel, Margaret Loesch, who was the "founding president and CEO of Fox Kids Networks Worldwide."  Defendant also announced that the Chief Creative Officer would be David Neuman, the "former President of Walt Disney Television."  Attached hereto as **Exhibit I** is a true and correct copy of a press release announcing the appointment of these executives.

25.    Defendant also went to great lengths to emphasize its content and its affiliation with famous celebrities, business titans, and other public personas.  For example, in April 2021, Defendant promoted a new series that was "exclusive" to the Kartoon Channel:  "the highly-anticipated animated children's series, Stan Lee's Superhero Kindergarten, starring Arnold Schwarzenegger."  Attached hereto as **Exhibit J** is a true and correct copy of a press release issued by Defendant announcing the new series.  On information and belief, Defendant leveraged the celebrity and renown of Mr. Schwarzenegger—the former Governor of the state of California and star of blockbuster hits such as *Terminator*, *Total Recall*, *Predator*, *Conan the Barbarian*, and many others—to bolster the fledgling reputation of the

nascent Kartoon Channel as being wildly successful.  Mr. Schwarzenegger even appeared on the popular nightly entertainment program, Jimmy Kimmel Live, to discuss his involvement with his "first" animated series.[2]

26.   Earlier this year, Defendant also promoted its affiliation with Warren Buffett—the renowned investor and philanthropist—to further add cachet and heft to its reputation.  In this regard, in January 2021, Defendant promoted its animated series "Warren Buffett's Secret Millionaires Club" with "an animated Warren Buffett" who "teaches kids strong lessons, not just about money and business, but about life through positive messages from Warren Buffett."  Attached hereto as **Exhibit K** is a true and correct copy of a press release issued by Defendant regarding this series.  According to Defendant's promotional materials, other "guest voice talent" appearing on this series include:  Bill Gates, the co-founder of Microsoft; Jay-Z, the famous rapper, songwriter, and record executive; and Gisele Bündchen, the famous model, businesswoman, and spouse of NFL quarterback Tom Brady.

27.   Although Defendant's promotional activities attempt to paint a rosy picture of a wildly successful going concern with respect to Defendant's new venture, the reality of Defendant's overall business is far more gloomy and dire.  For starters, Defendant is currently facing at least two class-action lawsuits in this District for securities violations and making false and misleading statements related to Kartoon Channel.  According to the allegations in one suit, Defendant made "false and/or misleading statements and omissions regarding … subscription fees for the Kartoon Channel" and misleadingly promoted it as a "Netflix for Kids" rather than what it really is:  "another app in a crowded space."  *Verdin v. Genius Brands International Inc.*, No. 2:20-cv-07457-DSF-RAO, Amended Class Action Complaint for Violations of Federal Securities Laws, Dkt. No. 68, ¶¶ 6,9 (C.D. Cal. Feb. 2, 2021).

---

[2] Wade Sheridan, *Arnold Schwarzenegger on Stan Lee:  'He is an absolute genius'*, UPI                (Apr.                27,                2021) https://www.upi.com/Entertainment_News/TV/2021/04/27/Arnold-Schwarzenegger-Stan-Lee-Jimmy-Kimmel/6831619526344/.

Defendant is also a nominal defendant in a shareholder derivative lawsuit brought in this District against Defendant's directors and/or officers for breach of fiduciary duty, unjust enrichment, and waste of corporate assets.  That lawsuit alleges Defendant marketed Kartoon Channel as "Netflix for kids, but free" with "no subscription fee," only for it to emerge that Kartoon Channel does in fact require a subscription fee. *See Correa v. Heyward et al.*, No. 2:20-cv-08277-DSF-RAO, Dkt.1, ¶ 7 (C.D. Cal. Sept. 9, 2020).

28.     Defendant likes to flex its supposed originality and unique offerings, but that appears to be nothing more than mere puffery based upon its own admissions. According to Defendant's Annual Report on Form 10-K submitted to the U.S. Securities and Exchange Commission in March 31, 2021 (the "10-K Annual Report"), Defendant defined the "children's media space" as "saturated."  *See* 10-K Annual Report, p.4.  It also admitted that "[w]e face competition from a variety of retailers that sell similar merchandise and have better resources than we do." Notwithstanding the purported success of the Kartoon Channel, the 10-K Annual Report detailed how Defendant, once again, closed out the year of 2020 with a "history of operating losses and incurred net losses."  Defendant reported that for the year that ended on December 31, 2020, "we generated net revenues of $2,482,127 and incurred a net loss of $401,669,805," *see id*., p.7, a staggering delta of over $399,000,000.   Attached hereto as **Exhibit L** is a true and correct copy of the Defendant's 10-K Annual Report.

29.     Without going into specific detail in the 10-K Annual Report, Defendant described its advertising strategy as involving various marketing "tactics" where it will "deploy" such things as digital advertising campaigns to support its brands, including Kartoon Channel.  *See id.*, p.4.  On information and belief, one of those unidentified "tactics" referred to by Defendant in its 10-K Annual Report include blatant trademark infringement and shameless piggybacking on Plaintiff's significant goodwill and stellar reputation as described below.

**D.** **Defendant's Intentional and Willful Infringement of Plaintiff's Intellectual Property in Defendant's Google Ads Campaign**

30.     Google is the largest and most popular search engine in the U.S. (if not the world).  Google maintains and administers its popular advertising program called "Google Ads."  In essence, how Google Ads works is as follows:  an advertiser drafts an advertisement containing:  (a) a headline (the most prominent part of the ad); (b) the body or text of the ad; and (c) a website address.  The advertiser selects certain "keywords" that, when typed into Google search bar, will trigger the advertisement to be shown to the consumer.

31.     Beginning in approximately May 2021, Defendant launched an online digital advertising scheme using Google Ads to intentionally and willfully trade off the tremendous goodwill and recognition enjoyed by Plaintiff.   Specifically, Defendant developed and is currently deploying its Google Ads such that when a consumer located in the U.S. searches Google for "Kidoodle," "Kidoodle.TV," or other search phrases including the term "Kidoodle," ***Defendant's Google Ads appear with Plaintiff's registered Kidoodle trademark embedded in the headline and right next to Defendant's trademark "Kartoon Channel*.**"  But it gets even worse.  Once a consumer clicks on the ad containing an unauthorized reproduction of Plaintiff's registered trademark, the consumer is whisked away ***to the Defendant's Kartoon Channel website***, further compounding the confusion, mistake, and deception resulting from this classic "bait and switch" scheme. Often times, Defendant's misleading and infringing Google Ad appears in the search results either: (1) before A Parent's Media Co.'s legitimate Kidoodle.TV Google Ad, (2) before the "organic" search results for Kidoodle.TV, or both.   Thus, not only is Defendant's conduct obviously infringing and misleading, Defendant has "cut in line" to promote its phony affiliation with Kiddodle.TV.

32.     Defendant's scheme represents a pervasive, and pernicious pattern of improper commercial conduct, as demonstrated by the mountain of evidence amassed by Plaintiff over the last several weeks and as further described and set forth herein.

**<u>Defendant Deployed Infringing Google Ads on May 15, 2021</u>**

33.     On May 15, 2021, an internet search was conducted on Google.com from a laptop using the search term "kidoodle.tv."   The following Google Ad appeared using A Parent Media Co.'s KidoodleTV trademark in big bold blue font right below Defendant's URL in small black letters:



Below is a version focusing on the relevant portion from the above screenshot:

1



2

3

4

5

6

7

8

9

10

11  34.   Once consumers click on Defendant's bogus ad, they are taken to

12  Defendant's website, kartoonchannel.com.

13  35.   Defendant could easily and readily stop this infringing, misleading, and

14  phony ad from running on Google Ads by simply accessing its Google Ads account,

15  and modifying the advertising headline to remove Plaintiff's trademark.  According

16  to Plaintiff's retained Google Ads expert, the whole advertising headline

17  modification from start to finish could be accomplished within a couple of minutes.

18  **Defendant Deployed Infringing Google Ads on May 27, 2021**

19  36.   On May 27, an additional Internet search was conducted using a mobile

20  phone located in the U.S.  The mobile phone used the Google.com search engine and

21  the word "kidoodle.tv" was typed into the search bar.  The following search result

22  appeared:

23

24

25

26

27

28

37.    As the above search result shows, A Parent Media Co.'s trademark KidoodleTV appeared prominently in Defendant's Google Ads headline above the organic search result, which shows A Parent Media Co.'s Kidoodle.TV website. Further, when this ad was clicked, the searcher was taken to Defendant's website, kartoonchannel.com.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



38.     Defendant could easily and readily stop this infringing, misleading, and phony ad from running on Google Ads by simply accessing its Google Ads account, and modifying the advertising headline to remove Plaintiff's trademark.  According to Plaintiff's retained Google Ads expert, the whole advertising headline modification from start to finish could be accomplished within a couple of minutes.

**Defendant Deployed Infringing Google Ads on June 2, 2021**

39.     On June 2, an additional Internet search was conducted using a tablet located in the U.S.  The tablet used the Google.com search engine and the word "kidoodle.tv" was typed into the search bar.  The following infringing and misleading

search result appeared:



40.    As the above search result shows, Plaintiff's trademark KidoodleTV appeared prominently in Defendant's infringing and misleading Google Ads headline above the organic search result, which shows A Parent Media Co.'s Kidoodle.TV website.  Further, when this infringing advertisement was clicked, the searcher was taken to Defendant's website, kartoonchannel.com.



41.    Defendant could easily and readily stop this infringing, misleading, and phony ad from running on Google Ads by simply accessing its Google Ads account, and modifying the advertising headline to remove Plaintiff's trademark.   According to  Plaintiff's  retained  Google  Ads  expert,  the  whole  advertising  headline modification from start to finish could be accomplished within a couple of minutes.

**<u>Defendant Deployed Infringing Google Ads on June 10, 2021</u>**

42.    On June 10, an additional Internet search was made using a mobile phone located in the U.S.  The mobile phone used the Google.com search engine and the word "kidoodle.tv" was typed into the search bar.  The following search result appeared:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19



20        43.     As the above search result shows, Plaintiff's trademark Kidoodle.TV
21 appeared prominently in Defendant's Google Ads headline above the organic search
22 result, which shows A Parent Media Co.'s Kidoodle.TV website. This infringing
23 headline is particularly egregious in that it makes an explicitly false statement of fact
24 that Kidoodle TV is supposedly a "new show on Kartoon Channel."  This statement
25 is blatantly false, confusing, and confounding.  Further, when this false advertisement
26 was clicked, the searcher was taken to Defendant's website, kartoonchannel.com.
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21



22    44.    Defendant could easily and readily stop this infringing, misleading, and
23 phony ad from running on Google Ads by simply accessing its Google Ads account,
24 and modifying the advertising headline to remove Plaintiff's trademark.  According
25 to  Plaintiff's  retained  Google  Ads  expert,  the  whole  advertising  headline
26 modification from start to finish could be accomplished within a couple of minutes.
27    45.    Regrettably, the above infringing, false, and phony ads are not the only
28 times Defendant engaged in willful and intentional conduct in violation of state and

federal law. Additional searches were also conducted on Google on May 19, 20, 21, 22, 23, 27, 28, 29, 30, 31 as well as June 1, 2, 4, 6, 8, 10, 14 2021, through mobile phones, tablets, laptops, and desktops, using search terms "kidoodle.tv Samsung", "kidoodle tv app", and "kidoodle.tv vizio" in multiple states in the U.S.  All searches yielded the same result of a user seeing Kidoodle TV in bolded blue letters with Defendant's URL above in small black letters.  Attached hereto as **Exhibit M** are screenshots of the above described Google Ads taken on different devices throughout a several week period in May and June, 2021. The Google Ads that are set forth in this Complaint and further set forth and described in Exhibit M are referred to as the Accused Google Ads.

## V.    CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### FEDERAL TRADEMARK INFRINGEMENT (LANHAM ACT § 32, 15 U.S.C. § 1114)

46.    Plaintiff re-alleges and incorporates by reference all of the allegations set forth in Paragraphs 1 to 45 as if fully set forth here.

47.    Plaintiff has a valid, enforceable, and registered trademarks.

48.    Defendant's unauthorized use of the KIDOODLE.TV®, KIDOODLE®, and KIDOODLETV® marks in interstate commerce in the Accused Google Ads to advertise, promote, market, and offer for sale Defendant's competing services constitutes willful and intentional trademark infringement under 15 U.S.C. § 1114 and is likely to cause consumer confusion, mistake, or deception.

49.    Upon information and belief, Defendant's unauthorized use of the KIDOODLE.TV®, KIDOODLE®, and KIDOODLETV® marks was willful, and with the intent to cause confusion, mistake, or deception.

50.    Plaintiff has been and continues to be damaged by Defendant's activities and conduct.

51.    Unless Defendant's conduct is enjoined, Plaintiff and its goodwill and

reputation will continue to suffer irreparable injury, which cannot be fully measured or compensated in monetary damages.

52.     A Parent Media Co. is thus entitled to injunctive relief restraining Defendant from any further acts of trademark infringement under 15 U.S.C. § 1116.

## SECOND CAUSE OF ACTION

### FALSE DESIGNATION OF ORIGIN OR SPONSORSHIP AND UNFAIR COMPETITION (LANHAM ACT § 43, 15 U.S.C. § 1125(A))

53.     Plaintiff re-alleges and incorporates by reference all of the allegations set forth in Paragraphs 1 to 52 as if fully set forth here.

54.     Defendant's unauthorized use of the KIDOODLE.TV®, KIDOODLE®, and KIDOODLETV® marks in interstate commerce in the Accused Google Ads to advertise, promote, market, and offer for sale Defendant's competing services constitutes a false designation of origin, false or misleading description of fact, or false or misleading representations of fact that are likely to cause confusion or mistake, or to deceive as to the affiliation, connection, or association of Defendant's services with A Parent Media Co., or as to the origin, sponsorship, or approval of the services provided by Defendant in violation of 15 U.S.C. § 1125(a), and thus constitutes unfair competition.

55.     Upon information and belief, Defendant's unauthorized use of the KIDOODLE.TV®, KIDOODLE®, and KIDOODLETV® marks was willful, and with the intent to cause confusion, mistake, or deception.

56.     Consumers seeing Defendant's use of Plaintiff's mark in advertisement in the marketplace are likely to believe that Defendant and/or Defendant's services are the same as Plaintiff's or sponsored by, associated with, or otherwise affiliated with Plaintiff.

57.     Plaintiff has been and continues to be irreparably damaged by Defendant's actions alleged herein in a manner that cannot be fully measured or compensated in monetary damages and for which there is no adequate remedy at law.

58.     A Parent Media Co. is thus entitled to injunctive relief restraining

Defendant from any further acts of false designation of origin and unfair competition under 15 U.S.C. § 1116.

**THIRD CAUSE OF ACTION**

**STATE STATUTORY UNFAIR COMPETITION & FALSE ADVERTISING (CAL. BUS. & PROF. CODE § 17200 & 17500 *et seq.*)**

59.    Plaintiff re-alleges and incorporates all of the allegations set forth in Paragraphs 1 to 58 as if fully set forth here.

60.    Defendant's unauthorized use of the KIDOODLE.TV®, KIDOODLE®, and KIDOODLETV® marks in interstate commerce in the Accused Google Ads to advertise, promote, market, and offer for sale Defendant's competing services constitutes willful and intentional trademark infringement, unfair competition, and false advertising in violation of the laws of the State of California.

61.    By these actions, Defendants have engaged in unfair competition and false advertising in violation of the statutory law of the state of California, Cal. Bus. & Prof. Code §§ 17200 & 17500 *et seq.*

62.    Upon information and belief, Defendant's unauthorized use of the KIDOODLE.TV®, KIDOODLE®, and KIDOODLETV® marks was willful, and with the intent to cause confusion, mistake, or deception.

63.    Defendants' conduct, namely the unauthorized use of Plaintiff's mark in connection with the offer for sale, sale, and advertisement of its products violates the unfair competition laws of the State of California, specifically Cal. Bus. & Prof. Code § 17200 *et seq.*

64.    Plaintiff has been and continues to be irreparably damaged by Defendant's actions alleged herein in a manner that cannot be fully measured or compensated in monetary damages and for which there is no adequate remedy at law.

65.    A Parent Media Co. is thus entitled to injunctive relief restraining Defendant from any further acts of unfair competition and false advertising.

**FOURTH CAUSE OF ACTION**

**TRADEMARK INFRINGEMENT UNDER CALIFORNIA COMMON LAW**

66.     Plaintiff re-alleges and incorporates all of the allegations set forth in Paragraphs 1 to 65 as if fully set forth here.

67.     Defendant's   unauthorized   use   of   the   KIDOODLE.TV®, KIDOODLE®, and KIDOODLETV® marks in interstate commerce to advertise, promote, market, and offer for sale services covered by the KIDOODLE.TV®, KIDOODLE®, and KIDOODLETV® marks as described above is likely to deceive or confuse the public and constitutes trademark infringement under the common law of the State of California.

68.     Upon information and belief, Defendant's unauthorized use of the KIDOODLE.TV®, KIDOODLE®, and KIDOODLETV® marks was willful, and with the intent to cause confusion, mistake, or deception.

69.     Unless Defendant's conduct is enjoined, Plaintiff and its goodwill and reputation will continue to suffer irreparable injury, which cannot be fully measured or compensated in monetary damages.

70.     A Parent Media Co. is thus entitled to injunctive relief restraining Defendant from any further acts of trademark infringement.

**VI.     PRAYER FOR RELIEF**

WHEREFORE, A Parent Media Co. prays for a judgment in this action as follows:

1.     For an order that Plaintiff's trademark has been infringed by Defendant in violation of 15 U.S.C. § 1114 and California state common law;

2.     That Defendant, and any of its officers, directors, agents, servants, employees, successors, assigns, and attorneys, as well as of those in active concert or participation with them, be preliminarily and permanently enjoined such that all of their respective officers, agents, servants, representatives, employees, attorneys, and all other persons

acting in concert with them be enjoined from using the KIDOODLE.TV®, KIDOODLE®, and KIDOODLETV® marks, or any mark confusingly similar to the KIDOODLE.TV®, KIDOODLE®, and KIDOODLETV® marks, in its advertisement, marketing, promotion, and or offer for sale of services;

3. That Defendant be ordered to file with the Court and serve on Plaintiff within thirty days after issuance of an injunction a report in writing and under oath setting forth in detail the manner and form in which Defendants have complied with the injunction, pursuant to 15 U.S.C. §1116;

4. For a finding that Defendant has disseminated false and/or misleading representations of fact, including by false designation of origin or sponsorship, in violation of 15 U.S.C. § 1125(a) and Cal. Bus. & Prof. Code §§ 17200 & 17500 *et seq*.;

5. For an order that Defendant disseminate within thirty days of judgment corrective advertising at Defendant's expense that informs consumers, the trade, and the public at large of Defendant's unlawful conduct as complained of herein and of the judgment requiring Defendant to cease such unlawful conduct, and/or order Defendant to pay Plaintiff's costs in producing and disseminating such corrective advertising;

6. For an order awarding Plaintiff its actual damages and Defendant's profits pursuant to 15 U.S.C. § 1117 in an amount to be determined at trial;

7. For an order requiring Defendant to pay Plaintiff the costs of this action and all reasonable attorneys' fees under 15 U.S.C. § 1117(a); and

8. For such other relief as the Court may deem just and proper.

## VII.   JURY DEMAND

A Parent Media Co. demands that all claims or causes of action raised in this

1  Complaint be tried by a jury to the fullest extent possible under the United States

2  Constitution, Fed. R. Civ. P. 38 and Local Rule 38-1.

3  Dated: June 16, 2021                                    Dorsey & Whitney LLP

4

5                                                          By: */s/ J. Michael Keyes*
                                                               J. Michael Keyes (#262281)
6                                                              keyes.mike@dorsey.com
                                                               Stefan Szpajda (#282322)
7                                                              szpajda.stefan@dorsey.com
                                                               Wonji Kerper (#335812)
8                                                              kerper.wonji@dorsey.com
                                                               DORSEY & WHITNEY LLP
9                                                              Columbia Center
                                                               701 Fifth Avenue, Suite 6100
10                                                             Seattle, WA 98104
                                                               Telephone:   (206) 903-8800
11                                                             Facsimile:   (206) 903-8820

12                                                             Kent Schmidt (#195969)
                                                               schmidt.kent@dorsey.com
13                                                             Navdeep K. Singh (#284486)
                                                               singh.navdeep@dorsey.com
14                                                             DORSEY & WHITNEY LLP
                                                               600 Anton Boulevard, Suite 2000
15                                                             Costa Mesa, CA 92626
                                                               Telephone:   (714) 800-1400
16                                                             Facsimile:   (714) 800-1499

17                                                             *Attorneys for A Parent Media Co.*
                                                               *Inc.*
18

19

20

21

22

23

24

25

26

27

28

# **VERIFICATION**

I, Michael Lowe, declare as follows:

1.      I am co-founder and CEO of Plaintiff A Parent Media Co. Inc. ("A Parent Media Co." or "APMC").   I have reviewed the foregoing VERIFIED COMPLAINT and verify that the statements made therein are true and correct to the best of my knowledge, information, and belief.

2.      I have personal knowledge of the facts set out in the foregoing VERIFIED COMPLAINT, and if called to testify, I would testify as to the matters stated herein.

3.      I have personal knowledge of A Parent Media Co., A Parent Media Co.' business and marketing efforts, A Parent Media Co.'s KIDOODLETV®, KIDOODLE.TV® and KIDOODLE® marks, and A Parent Media Co.'s actions, including those set out in the foregoing VERIFIED COMPLAINT, and if called to testify, I would testify as to the matters states herein.

4.      Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States that the foregoing factual statements in the VERIFIED COMPLAINT about myself, my activities, A Parent Media Co., A Parent Media Co.'s activities, and my or A Parent Media Co.'s interactions with Defendant are true and correct factual statements.


Executed on June 16, 2021 in AB___,   CANADA___

_____
Michael Lowe